I'll next hear from counsel on Chen v. Holder. Good morning, Your Honor. If it pleases the Court, my name is William Keng, representing the Petitioner. Again, this is a case regarding whether the judge's adverse credibility finding was supported by substantial evidence. This is a Free Real ID Act case, and the standard is substantial evidence to determine credibility. The immigration judge in this case made several points or findings to support her adverse credibility determination, such as the Petitioner's demeanor. Sometimes he was not responsive, and also whether the person, the Petitioner, was married or not, and whether at the time when he was expelled from school he was 17 or 18, and whether his father or his mother helped him to arrange for travel documents to leave China, and finally, whether the photograph of a house, allegedly the house was demolished by the government, whether the photograph shows that the remaining of the house was actually half demolished or actually was halfway under construction. I submit to the Court that the Petitioner at the time of his entry to the United States was only 18 years old, and he was little educated, and he came to a foreign country. So at the time of his entry, he was questioned at the airport in Miami by the immigration inspector. Let me ask you this. I would agree with you that some of the reasons listed, which there were many, possibly are not supported by the record or could be speculative. But I am concerned about a few of them, and I'll direct you to that, that go into the heart. And I think his true age, I think, may be of some importance. The evidence that he submitted, namely his daughter's birth certificate, suggests that he and his wife were not in fact in high school when the daughter was conceived and were instead 21 years old. And that, in my view, I possibly cast doubt on his entire story of getting pregnant in high school, getting kicked out before he could finish, and having the doctors, school officials, and town officials bearing down on him to obtain an abortion. And so even though Chen, at 21, would have still been underage, he would have been for the legal age to marry, it still doesn't seem to save the whole – he has a very elaborate story about what happened in high school. So that really concerns me. Yes, Your Honor. Going to that point, the birth certificate was obtained by his girlfriend or his coming-of-age wife in China. After he, the petitioner, had come to the United States, he showed both the mother and the father of the baby were 21 years old. There's no way to prove that the mother of the baby had reported a true age. Well, that's an argument, but I'm just saying, you know, where some of the things, whether they were married or not married because there was some question about whether it was recognized or not, you know, that might have been speculative. But you're making one argument, but I have to find that, you know, that it compels to go against this one. And if, in fact, it does seem to show that they were 21, which wouldn't have meant that they were in high school, and his whole story then collapses. But the petitioner did submit a notary certificate of his birth in China, and the notary certificate showed his true age. He was born in November of 1982. So when he came to the United States, even at the time when he landed in Miami, he was only 18 at that time. And the judge or not the child attorney did not raise any issue about the authenticity of the birth certificate, which was notarized by the Chinese government through official channels. On the other hand, Your Honor, may I go forward? The respondent, the petitioner in this case, he was, as I mentioned, he was questioned as soon as he was landed in the United States when he was 18. At that time, he was unrepresented by any legal, any attorney or legal aid. At that time, under oath, he told the immigration inspector the story that he was not married, he was a student, but he had a child already, and he fled China because of fear of punishment. And two days later, an immigration asylum officer held a credible fear interview to determine whether his story holds water. And at that time, he was still unrepresented, and he told the asylum officer the same fear that he had. He was underage, he was not married, and he had a child in China, and therefore he feared punishment if he returned to China. However, the immigration judge nor the BIA totally ignored these statements which were made under oath, and immediately upon his arrival at the time, he was only 18. Even though when he went to court two years later, he was still only 20 years old, the judge said that like he was nonresponsive to some of the questions. For example, the judge asked the petitioner, if you were coming to the United States, why did you have to go to Brazil first? The respondent was nonresponsive. Of course he was nonresponsive, his trip was arranged by alien smugglers, and he had no idea why he had to go to Brazil. But that is not substantial evidence to find adverse credibility, and it didn't go to the heart of the asylum claim. So I believe in this case, the judge should have taken into consideration, should have given some weight to the Q&A at the airport, and to the reports on the credible fear. Without those, the rest of the judge's findings, the reasons for finding adverse credibility, most of it is conjecture and speculation, or not substantial enough to hold adverse credibility. Is there any way to verify the age of the child in the photograph? The age of the baby? Right, right. I looked at the picture, the baby did look older than two months old. Well, yeah, it kind of did. For any of us that have had children, it was a big old baby. It's true, but I do not know how to verify it. And it was not in the record anyway. It's not in the record? No, it's not in the record, how to verify a baby. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Gladys Stephenson Guzman on behalf of the Attorney General. The petition for review should be denied because substantial evidence in the record does not compel a contrary conclusion from the immigration judges that petitioner was not credible. In her decision, as opposing counsel pointed, the immigration judge provided specific and cogent reasons for her adverse credibility finding. She found Mr. Chen's testimony internally and externally inconsistent. Do you think any of these were speculative and possibly not good? I would hesitate to say yes. I would, however, love to point out those that were, in fact, inconsistent and those that do go to the heart of the claim, like petitioner's age, as Your Honor noted. I do think that whether or not he was married. Well, I mean, part of the reason that you're a lawyer and that you look at these things, that obviously that, you know, it's to get a fresh look at it. And, you know, some of, you know, I mean, I would have to say the thing whether he's married and he goes white for his girlfriend. I mean, there, you know, there did seem to be, you know, he didn't, you know, arguably if that were the only thing, I would say that wouldn't be enough because there was questions about whether the marriage was recognized or because they were clearly underage or any number of things. I would disagree because it was his testimony before the immigration judge that it was sufficient to acquire a marriage license in order to be legally married. When he came into the United States and he was put through the question and answer at the port of entry, he stated that he was single. When he faced the credible fear interview, he said he was married. When he filed his asylum application, he said he was married again. Then in his testimony, he went back and forth until he ultimately explained, well, I was married, but then my marriage license was taken away because we bribed, my mother bribed someone in order to fake our ages so that we could get this marriage license. So technically, I'm single. He could have provided all of those explanations from the beginning, from the moment he faced the question and answer. So I would have to disagree with Your Honor in that aspect. I do not think that that is a trivial or speculative finding. Well, give us your, why don't you from your assessment, give me the ones that you think are strongest and. I do believe that the government's position is that his age, whether he was 17, 18, 21, his age, his civil status, whether he was married or single, the fact that he was in school or whether he was expelled from school. Again, in his asylum application, in his credible fear interview, in his question and answer, he said, I'm a student. I'm a student in graphic arts. Yet in his testimony, he speaks about being expelled and coming here for a job. In his question and answer interview at the port of entry, he says that his purpose of coming to the United States is to acquire a job, that those three are the main, most, the strongest arguments, the strongest inconsistencies that support the adverse credibility finding. They go to the heart of his claim. The crux of his argument, the heart of his claim is, I am a single man, underage. My girlfriend and I, my wife and I, my girlfriend and I, my significant other and I are pregnant. We faked our age so we could get a marriage license, and now we're being persecuted. Those three definitely go, those four aspects, his age, his civil status, whether or not they were students. What about the big old baby? I'm sorry, ma'am? The big old baby picture. The big old baby, that's another thing. Once the immigration judge found him incredible, she looked to supporting evidence, and what he provided were pictures that further confused the immigration judge. There's a big old baby, like Your Honor noted. When you've had a baby or have been around a baby, you know that at two months old, that baby can't hold his head up that way. That baby is not that big. Well, how would that be, what would the significance of that be in terms of what he represented that, that he represented to be a two-month-old baby, but how would, you know, how would you look at that as being significant? Because it further supports the fact that his testimony is unreliable. His story is unreliable. He cannot be trusted in what he says. The immigration judge is left confused as to what aspect of the story to believe and what aspect not to trust. Therefore, what is he, what is she to do in this case? Furthermore, Your Honors, not only that, but going to the other inconsistencies in his testimony that might not go to the heart of his claim but further support his unreliable testimony are the fact that he, in the beginning, states that his father made all the arrangements for him to come to the United States, but then testifies to his, in detail, about his mother arranging his trip to the United States. There's also inconsistent statements about how he acquired the U.S. passport and when he began to use it, if he acquired it before entering France, on the way to France, or after he landed in France, if he used it to enter France or not. And, again, the purpose of his visit. He, in the question and answer at the court of entry, like I mentioned before, he said that the purpose of his visit was to acquire a job. But he said he planned on working in a restaurant as a waiter, and then when asked why he left his home country, he stated, because I did not have a job. Also, my girlfriend was pregnant with my child, and that was not allowed in China. Yes, but nevertheless, acquiring a job constitutes parts of his reason to be here. Someone who is in fear of living in their home country, nature would have it that the first thing he would say is, my girlfriend is pregnant, we faked all these documents, we could not satisfy the family planning policy, please give me asylum. The first thing that came to his mind was, I need money. That's what he said. So it undercuts his asylum claim, his claims of past persecution. He was further, the immigration judge found him further unresponsive as to the details of the different forms of passports and travel documentation he utilized. He found him unresponsive as to why not picking a shorter route. He could have answered, I did not take care of this, of these arrangements, but he didn't. He just, he was unresponsive. As for the question you asked before as to how to verify, Judge Wardlaw asked before as to how to verify the baby's age in the picture, a letter from the mother of the child could have served that purpose. An affidavit of some sort could have served that purpose. But it was a simple. What was the picture offered for? What was the purpose of offering the picture at the time it was offered? I believe it was offered simply to show that the baby existed and that the girlfriend or wife existed, and that the baby was in fact two months old at the moment he said that. It was taken in October of 2001, and it was already established that this baby was born on August 8th, I believe, of 2001. Your Honors, the immigration judges, after assessing the petitioner's demeanor, together with the discrepancies regarding his age, his civil status, the arrangements of his travels to the United States, as well as the inconsistencies regarding his acquiring of the U.S. passport and his usage of the U.S. passport, together with the confusing corroborating documents he utilized to support his claims, all addressed material elements that – all material elements of his claim and all support the immigration judge's specific and cogent reasons for finding him not credible. Furthermore, petitioner cannot point to anything in the record that would compel a reasonable fact finder to conclude otherwise. If the bench doesn't have any further questions, the government submits on the briefs. All right, thank you. Thank you so much. I think you had some time left. Did you want to use it for rebuttal? In the record, nobody challenged the authenticity of the hospital delivery record, and that record shows the name of the respondent and his girlfriend and the assistance of a child. The government, in the immigration court level, has all kinds of ability to do authentic – to do bona fide forensic document tests, and they do it routinely now. And since nobody challenged the authenticity of the document in court, so I believe that record – that document has been entered into the record as a piece of evidence. What's the legal age for an official marriage in China? Legally, 20 for women, 22 for men. All right, and is it true that in China, as soon as you're born, you're age one? Yes, it's true. If you're born later in the year, like in December, as soon as one month later it goes to the new year, it becomes two right away. One month old becomes two years old. Okay. All right, thank you. Thank you very much. Okay, Chen versus Helter is submitted. We've previously submitted, as of today, Hightower versus Campbell, and United States versus Yi.
judges: Canby, Wardlaw, Callahan